Good morning. My name is Russ Marsh, and I am the counsel for appellant Charles Bell in this case. I'd like to reserve two minutes for rebuttal. There are two issues on this appeal. First, we ask that you reverse the defendant's conviction and remand the case for new trial based on prosecutorial misconduct during the closing and rebuttal arguments, including vouching. Second, if you are not going to remand for a new trial, we ask that you vacate Mr. Bell's sentence and remand for resentencing because Nevada robbery is not a crime of violence under the new sentencing guidelines that were amended in August of 2016, which actually was just before the sentencing in this case, and we ask that they be applied. Now, I will note that on the second issue, that issue has already been argued and submitted in another case called United States v. Edling, which was heard two months ago. It was actually argued by Ms. White. It's a case out of Nevada. And so I don't expect we're going to spend a lot of time talking about that. But I don't know. Ginsburg. Just so you know, too, our procedure is such that the first argued and submitted would have precedence, whatever that answer may be. I certainly understand that. And so I'm going to focus on the new trial issue. And obviously, you can remand for a new trial without waiting for a decision in Edling. And obviously, my client would prefer that he get a new trial to be being resentenced. So regarding the request for a new trial based on prosecutorial misconduct, there was a pattern of prosecutorial misconduct during both the closing and rebuttal arguments in this case by the two AUSAs who made those arguments. This was a closed case where the only witnesses at all were five police officers, five detectives. And the case was entirely dependent on their credibility because there was no confession, there was no DNA or fingerprint evidence. And it was a completely circumstantial case in that way. Now, I was the counsel. I hate to admit that, but I was. I objected five times during the closing and during the rebuttal. And the judge overruled every single objection. And I asked for curative instructions, I think, three times. Judge Dorsey did not give any curative instructions. And so that's the context that we approached this. I'd like to talk first about the three instances of vouching. Now, just about at the beginning, and they all took place during the rebuttal argument. Just about at the beginning of the rebuttal argument, the AUSA said, just because they are cops does not mean that they will come in and commit perjury to convict this man. And I objected, and the judge overruled it. Now, 13 years ago, in the United States versus Weatherspoon, which is a case out of the same district, that case was reversed because the prosecutor in that case said the police officer wouldn't lie because, one, he'd get fired, and two, he could get prosecuted for perjury. Now, 13 years ago, we've reached the point where instead, a defendant, or the government is arguing that the police wouldn't lie just because they're police, or they're not lying just because they're police. They are, in effect, saying the same thing. They're saying these police officers aren't lying, and here's why. And I'm the government, and I have the force of government behind me, the imprimatur of the government, as they say in the case law. And believe me, they're not lying. Was it the case that the government was responding to comments made by the defense in their case? That's what they claim during their brief. Certainly, there was a very vigorous argument on both sides. But I would say that my argument in closing focused on specific instances of problems with credibility, particularly with Detective Souter. He's the one who said that he didn't, even though he put it in an affidavit, he didn't believe that the purpose of DNA was to exonerate people. He thought it was just to find people guilty, and so I was talking about that. And the other was specific comments about the testimony of then-Sergeant, now-Lieutenant Grader, who's the one who, even though it's nowhere in the police report, said that he saw the defendant put something near where the gun was found. So I was talking specifically about that, as opposed to this blanket statement that the prosecutor's making. But more importantly, you can't open the door to prosecutorial misconduct. The government isn't allowed to respond in kind when a defense attorney makes an aggressive argument. And here they crossed over the line several times. I just want to be clear which statements and which standard of review, and I appreciate you felt like you couldn't object to everything that came up. No. Given the volume of things. So I just wanted to know, on the improper vouching, which is, you know, just because they're cops doesn't mean they would lie, that was a statement to which you did not object. Is that right? I objected to the first statement, which is the one, they're not lying just because they're police. Correct. Then right after that is the series of rhetorical questions where he says, you know, the defense lawyer says that there weren't any civilian witnesses. Well, what would have happened if we would have called the civilian witnesses? Would they have said, you know, he gives a series of things that the police said. Right. And then he said, that wouldn't have added anything. And the government admits that that's vouching under the prong of, I'm going to pronounce this, Nicotia. So I'm just, I just want to go back to my first question, though. On that, just because they were cops, they wouldn't commit perjury to come in here. I objected to that. That one was objected to. Right. Okay. I didn't object to the second one I'm talking about. The second one, which is what is almost the extra evidentiary claim. Right. All right. Thank you. And then I didn't object to the third one, which was the police don't fabricate evidence. Right. Or can't fabricate evidence, which there's two issues with that. One is it's not true. You know, the government fabricates evidence all the time. And the prosecutor doesn't even know whether they're doing it or not. Right. Because he's not there. He's not watching. Unlike, despite what he said in his argument about not being filmed, like, or put yourself in the shoes of the police, like it's an episode of cops, there wasn't a film crew following around either. So he doesn't know whether it happened or not. And, you know, to respond again to Judge Fuentes' argument about was it invited, that's another perfect example. You look at the Smith case where the defense attorney basically said the prosecutors would sit here and the cooperating witness could commit perjury and they wouldn't do anything about it. And the government got up and said, well, it's our job to make sure that doesn't happen. And that's basically what I would say the AUSA was doing here, which is to say the police can't fabricate evidence. It's a blanket statement. I'm going to reserve my time. Thank you. Good morning. May it please the Court. Good morning, Counsel. Elizabeth White for the United States. I apologize. I have a terrible cold. I hope that I'm not coughing and sneezing through all of this. Before you get started, could you please tell me whether you agree or disagree with your learned friend as to whether he properly objected to each of the instances of prosecutorial misconduct? Was there an objection or was there not? There were there were there were some some things were objected to and some things were not. Why don't you tell me? Because that that affects our scope of review between clear error and plain error. Yes. So why don't you tell me what you concede was objected to and what you claim was not objected to? The statement, just because they were cops, doesn't necessarily mean they would come in here and commit perjury. That there was an objection to that. There was an objection to the putting their putting look, see this through the eyes of the police, look at it the way they did, like it's an episode of cops. He was basically saying, if you if you look at what happened as the as the cops thought that was objected to. What about civilians who would have testified the same as cops? That was not there was no objection to that. And I think it's important to go back. And I did include the defense's closing argument in a supplemental excerpt of record and look and see what it was that the rebuttal was rebutting and what defense counsel said in closing argument, among other things, was ask yourself whether a bunch of police officers have an interest or bias in the outcome of a criminal case. I would suggest that they do. He then talked about a particular one officer, Detective Souter, and said he's not in the innocence of business. He's in the business of trying to prove people guilty. And then later, they later defense counsel said, I would suggest again that what Souter did and what Metro did is they found a gun and they worked backwards to pin the gun on Mr. Bell by creating the testimony that you heard today. So the clear argument from defense counsel is these cops are lying because they're cops and their job is to find somebody and pin the crime on them. What was the jury instruction on witness credibility? It was the standard instruction on witness credibility. And in fact, what the government said in rebuttal was not, no, you should believe them because they're cops. Well, as part of the instructions, doesn't the court tell the jury that these are arguments of counsel and you are not to consider this as evidence in weighing the issue of guilt or innocence? Absolutely. That was and that they. Not that you disregard the arguments, but that is not evidence. Right. The jury instruction said that the evidence is the sworn testimony, the exhibits, facts, the in reaching its verdict, the jury should consider only the testimony and exhibits, and what the lawyers say in their closing arguments is not evidence. So I mean, is your argument that simply because he attacked the credibility of the officers that that would somehow justify the vouching? See, and I don't think that that was the proper response. I think that what if the prosecutor had said, you know, the defense is saying that police officers lied, and I'm up here telling you that I know that these police officers were not lying, these police officers don't lie, anything like that, what he said is just because they're police officers doesn't necessarily mean they're going to come in here and commit perjury, which is a direct response to the defendant's suggestion that because they are cops, they are inclined to come in here and say whatever needs to be said to pin this crime on this defendant. So that one, I honestly believe, was just pure response and quite restrained response, because the prosecutor did not say they're not lying and didn't say cops don't lie. What he said is just because they're cops doesn't necessarily mean that they're going to come in here and commit perjury, which is what the defense had suggested in its close. So I think that was an absolute fair response. I don't think that that crossed any line of vouching whatsoever. It is, you know, what the Supreme Court said in Young, you know, in Young, the prosecutor's response was, in my opinion, the guy did it. And even there, the Supreme Court said that although that's not something that should be said, it wasn't reversible, because what he was responding to was the defense counsel saying there is nobody here in this courtroom who thinks this, you know, my client is guilty. And so you have to look at the comment that is made in the context in which it was made, and whether in the context in which it would be, in which it is made, it is likely to undermine the confidence in the verdict. And here what you've got is a very fair response. And with respect to this comment about fabricating evidence, in their brief and also here again at argument, he --- defense counsel suggests that what the prosecutor was saying is that the police don't fabricate evidence. And that's actually not what he said. He said that the government can't --- the government doesn't fabricate evidence. The government can't fabricate evidence. We can't pull a rabbit out of a hat. And I understand that just in, you know, that statement alone in context is probably problematic, or without context is problematic. But again, the defense counsel was making two almost contradictory arguments in his closing argument. He was attacking the or challenging the police for a lackadaisical investigation. They didn't get any names. They didn't get any contact numbers. They didn't take any witness statements. You know, there was they did this lackluster investigation because they had decided to pin it on Bell, and they didn't want to get anything else. So they didn't even get names or contact information from the other people in the park, and then at the same time criticized the government for not bringing those -- for not having those witnesses, whose names and contact numbers we didn't have,  And that --- Ginsburg-Well, but that would be the evidence. I mean, the --- O'Connor-Yes. Ginsburg-They didn't. But then instead, the prosecutor said, well, if we had had those people in the park, what would they have said? Well, the same thing you heard from the cops. O'Connor-Yes. Ginsburg-And now you're telling me, well, how could we have known that? We didn't even have their name and number.  Yes. Yes. I think I--. Ginsburg-So the prosecutor kind of reacted to each of these things kind of in a very odd way in terms of crossing over the line. O'Connor-I think that the so these three things are together. I do think the first one is just a fair response to the accusation that the defense counsel was making. The second one, this idea that was responding- Ginsburg-Okay. The first one being the perjury? O'Connor-The just because they're cops doesn't necessarily mean they would commit perjury. Ginsburg-Perjury. O'Connor-The second one that about the fabricating evidence, you know, I think that what the prosecutor said is, you know, the defense counsel wants you to ‑‑ defense wants you to speculate that somebody else did it, that the two people sitting in the car put the gun there, that this, that, and the other. And there's no evidence that would sustain those inferences being reasonable when you look at the entire picture, when you look at all of the evidence that the government has presented to you. The government can only present the evidence that it has. It can't fabricate evidence. He's not saying ‑‑ that right there is talking about the prosecution. That right there is not saying the police can't fabricate evidence. I mean, that's not the statement that the prosecutor is making there. Now, you can argue about whether it was right or wrong to say it, but I think it's important to be clear what he was saying. He wasn't saying the police can't make things up. He was saying the government can only present the evidence that it has. Now, then, the next statement, and it is the one that we do concede was just really poorly worded and shouldn't have, you know, I think this idea of what would these other civilian witnesses have said. This one is plain error, right? I mean, this one ‑‑ and, of course, when some errors are preserved and some aren't, it's plain errors. If you're going to get into ‑‑ they don't make a cumulative error argument, but that would be plain error. I think that ‑‑ Kennedy, by that, do you mean that the scope of review was plain error, or are you conceding it was plain error? No, no, no. I'm saying the scope of review. Well, then say it that way. I'm sorry. I apologize, Your Honor. And thank you for clarifying that, because I wouldn't want to. The scope of review is plain error, and I think that it is telling. There's two things I think are telling. One is, after the rebuttal, closing argument, the defense counsel, after the rebuttal, said, you know, Your Honor, I'd like to make two objections, and he made objections about the thing about looking at this through the eyes of the cops like you're talking about this, you know, the ABCs reading, or the three Cs of coming to this together. But the defense counsel didn't object to this one, and I think that ‑‑ I think that because the transcript, you know, and the cold transcript looks ‑‑ I mean, it's vouching. It's ‑‑ it is taken by itself. It suggests that there's stuff that ‑‑ it may suggest that the government has information that it didn't put on. But it's written as a ‑‑ it's ‑‑ it was said as a hypothetical question. How ‑‑ there's different ways it could have come across to the ‑‑ to the jury. The defense didn't object to it, and I think that the ‑‑ also in mitigation ‑‑ I see my time is up. If I could just finish this one point. Also in mitigation, the whole ‑‑ throughout the entire trial, the defense had been cross‑examining all of these officers about, well, did you get their name? Did you get their contact? Did you take any witness statements from these people? No, no, no, we didn't, we didn't, we didn't. So there was ‑‑ so the government, or the officers had been very forthright throughout the entire trial, and we never contested that we did not have any other information. So I think, again, putting that in context, you know, the prosecutor is inviting the jury to take a hypothetical scenario and said so badly. You know, the Supreme Court has said that rebuttal arguments, you know, they're ‑‑ you don't have time to prepare, you're thinking on your feet. Sometimes you say things that are ambiguous, and that doesn't excuse misconduct or vouching, but it does suggest that the court should not lightly infer that the prosecutor meant to do the wrong thing or that the jury took it in the wrong way when something ‑‑ And I assume this prosecutor has now read these briefs and understands the frailties of vouching. Thank you. Yes. Thank you. Thank you very much. I'll try to fit within the two minutes. Obviously, regarding the objections, it's always a tough decision how much to object or enclose an argument. I did it five times. I stopped after the last time, which was the first vouching. And, you know, at some point, one, it becomes futile, and, two, you can actually be underlining what the prosecutor is saying. Like the defense attorney is trying to keep us from hearing it. It must be really important. You know, let's listen to it. Second on the standard of review, I don't ‑‑ obviously, I objected to some things, not others. This Court's held that when you do that, if you're looking at the whole thing, it's a plain error. The two ‑‑ or a lot of the cases ‑‑ You mean clear error. There you go. Clear error. A lot of the cases, including Witherspoon, more recently Alcanta Castillo, had similar situations. That was the standard they used. I was looking for sort of a real short way to look at it, and it's from Alcanta Castillo, where they frame the issue as whether a jury untainted by prosecutorial misconduct could have acquitted the defendant. I think that's a good way to look at it. And that way, you look at the entire context of closing argument, which starts with the prosecutor misstating the evidence three, maybe four times, including, very importantly, talking about whether Sergeant Rader saw the defendant pulling something from his waistband. Then three times, she says that the lack of DNA evidence can't be a basis for reasonable doubt. That was overruled by the judge also. And then we have the three instances of vouching and the rebuttal, and we end with put yourself in the shoes of the police, like this is an episode of Cops. And I, when you look at the variety of prosecutorial misconduct here, it does indicate that, try to step back and ask whether without that, the jury would have done the same thing. And I would suggest they could have reached a different verdict if it hadn't been for that. And this was a close case. It was completely dependent on police credibility, and I'd ask that you reverse for a new trial. Thank you. Thank you. Thank both counsel for your argument this morning. The case of United States v. Bell is submitted. Our next argument will be in United States v. Ward.
judges: Fuentes, McKeown, Bea